UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Order Filed on
**3/12/2014**
by Clerk U.S. Bankruptcy
Court District of New Jersey

In Re:

 Ashley Stewart Holdings, Inc.

| | |
|---|---|
| Case No.: | 14-14383-MBK |
| Adv. No.: | |
| Hearing Date: | 3/12/14 |
| Judge: | Michael B. Kaplan |

The relief set forth on the following pages, numbered two (2) through _____ is hereby **ORDERED**.

**DATED: 3/12/2014**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**CURTIS, MALLET-PREVOST,**
    **COLT & MOSLE LLP**
101 Park Avenue
New York, NY 10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
Cindi M. Giglio
Bryan M. Kotliar

*Proposed Counsel to the Debtors*
 *and Debtors-in-Possession*

**COLE, SCHOTZ, MEISEL,**
    **FORMAN & LEONARD P.A.**
Court Plaza North
25 Main Street
Hackensack, NJ 07601
Telephone:  (201) 489-3000
Facsimile:  (201) 489-1536
Michael D. Sirota
Ilana Volkov

*Proposed Co-Counsel to the Debtors*
 *and Debtors-in-Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| ASHLEY STEWART HOLDINGS, INC., et al.,[1] | Case No. 14-14383 (MBK) |
| Debtors. | (Joint Administration Requested) |

**ORDER AUTHORIZING THE DEBTORS TO (A) CONDUCT STORE CLOSING SALES AT
CERTAIN LOCATIONS; (B) ENTER INTO AND APPROVING THE CONSULTING
AGREEMENT WITH GORDON BROTHERS RETAIL PARTNERS, LLC; AND (C) REJECT
CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Ashley Stewart Holdings, Inc. (6790); New Ashley Stewart, Inc. (6655); AS IP Holdings, Inc. (6890); and NAS Gift LLC (5413).  The Debtors' corporate offices are located at 100 Metro Way, Secaucus, NJ 07094.

*Approved by Judge Michael Kaplan  March  12, 2014*

Page:        1

Debtor:      Ashley Stewart Holdings, Inc., <u>et al.</u>

Case No.:    14-14383 (MBK)

Caption:     Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
             Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
             Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
             Nonresidential Real Property

---

The relief set forth on the following pages, numbered two (2) through eleven (11),

is hereby ORDERED.

17905139v2

*Approved by Judge Michael Kaplan  March  12, 2014*

Page:       2
Debtor:     Ashley Stewart Holdings, Inc., et al.
Case No.:   14-14383 (MBK)
Caption:    Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
            Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
            Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
            Nonresidential Real Property

---

Upon the motion (the "Motion")[1] of the above-captioned debtors and debtors-in-possession (the "Debtors") for entry of an order, pursuant to section 105(a), 363(b), 365(a), and 554(a) of the Bankruptcy Code and Bankruptcy Rules 3002, 6004 and 6006, (i) authorizing the Debtors to (a) conduct store closing sales at certain locations; (b) enter into and approving the consulting agreement dated as of March 6, 2014 (the "Consulting Agreement") with Gordon Brothers Retail Partners, LLC ("GBRP"); and (iii) reject certain unexpired leases of nonresidential real property; and upon the Declaration of Michael A. Abate in Support of First Day Pleading, the Declaration of Perry M. Mandarino, the Declaration of Erin White, the Declaration of Alan B. Miller; it appearing that the relief requested is in the best interests of the Debtors' estates, its creditors and other parties in interest; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* dated as of September 18, 2012; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Debtor is hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Store Closing Sales at the Closing Stores in

---

[1] Capitalized terms used herein but not otherwise defined have the meanings ascribed to them in the Motion.

17905139v2

*Approved by Judge Michael Kaplan March  12, 2014*

Page:        3
Debtor:      Ashley Stewart Holdings, Inc., et al.
Case No.:    14-14383 (MBK)
Caption:     Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
             Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
             Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
             Nonresidential Real Property

---

accordance with the Consulting Agreement.  No bulk sale, "going -out-of-business," or similar

law shall prohibit the Debtors or GBRP from taking any action contemplated by the Consulting

Agreement.

2.        The Debtors are authorized to enter into subsequent store closing sales on

the exact same terms and conditions of the Consulting Agreement (should the need arise, in the

sound exercise of the Debtors' business judgment), by filing a notice of amendment to the

Consulting Agreement on the docket in these Chapter 11 Cases and providing parties-in-interest

with three business days' notice and an opportunity to object to such amendment.

3.        The Debtors are hereby authorized and empowered to enter into the

Consulting Agreement in the form attached hereto as **Exhibit A**, and the Consulting Agreement

is hereby approved in its entirety and is incorporated herein by reference, and it is further ordered

that all amounts payable to GBRP under the Consulting Agreement shall be payable to GBRP

without the need for any application of GBRP therefor or a further order of the Court.

4.        Subject to applicable state and local public health and safety laws ("Safety

Laws"), and applicable tax, labor, employment, environmental, and consumer protection laws,

including consumer laws regulating deceptive practices and false advertising (collectively,

"General Laws"), but excluding GOB Laws (as defined herein), the Debtors and GBRP are

authorized to take such actions necessary and appropriate to implement the Consulting

Agreement and to conduct the Store Closing Sales without the necessity of a further order of this

Court as provided by the Consulting Agreement, including, but not limited to, advertising the

Store Closing Sales through the posting of signs (including the use of exterior banners), use of

-3-

*Approved by Judge Michael Kaplan  March  12, 2014*

Page:       4
Debtor:     Ashley Stewart Holdings, Inc., et al.
Case No.:   14-14383 (MBK)
Caption:    Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
            Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
            Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
            Nonresidential Real Property

---

sign walkers and street signage, in accordance with the Consulting Agreement and as otherwise

provided in the sale guidelines (the "Sale Guidelines"), which Sale Guidelines are hereby

approved in the form attached hereto as **Exhibit B**.

      5.    The provisions of this Order shall be self-executing notwithstanding any

restrictions in the Consulting Agreement (other than the need for the Debtors' prior consent) on

GBRP's ability to conduct the Store Closing Sales in compliance with applicable laws or Closing

Stores leases.  All newspapers and other advertising media in which the Store Closing Sales may

be advertised, and all Landlords are directed to accept this Order as binding authority so as to

authorize the Debtors and GBRP to consummate the Consulting Agreement and to conduct the

Store Closing Sales at the Closing Stores, including, without limitation, conducting and

advertising of the Store Closing Sales (at the contractual rates charged to the Debtors prior to the

Petition Date) in accordance with the Consulting Agreement, the Sale Guidelines and this Order;

and no further approval, license or permits of any governmental authority shall be required.

      6.    If any parties or persons, including but not limited to Landlords,

subtenants, utility companies, governmental agencies (except to the extent provided otherwise in

this Order), sheriffs, marshals or other public officers, creditors and all those acting for or on

their behalf, believe that cause exists to:  (a) prohibit GBRP from advertising the Store Closing

Sales, to the extent same is consistent with the Consulting Agreement; (b) in any way interfere

with or otherwise impede the conduct of the Store Closing Sales at the Closing Stores or the use

or maintenance of the assets of the Debtors located at the Closing Stores; or (c) institute any

action or proceeding in any court or other administrative body having as its objective the

-4-

*Approved by Judge Michael Kaplan  March  12, 2014*

Page:      5
Debtor:    Ashley Stewart Holdings, Inc., et al.
Case No.:  14-14383 (MBK)
Caption:   Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
           Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
           Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
           Nonresidential Real Property

---

obtaining of an order or judgment against the Debtors, GBRP or a Landlord which might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized herein, this Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, the Agent, the Landlord or the Store Closing Sales until this Court has resolved such dispute.  This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

7.    The Store Closing Sales at the Closing Stores shall be conducted by the Debtors and GBRP without the necessity of compliance with any federal, state or local statute or ordinance, lease provision or licensing requirement affecting store closing, "going-out-of-business," liquidation or auction sales, or affecting advertising, including signs, banners, and posting of signage, other than Safety Laws and General Laws, except to the extent set forth in the Sale Guidelines; provided, however, so long as the Store Closing Sale is being conducted in accordance with the Sale Guidelines and in a safe and professional manner, GBRP and the Debtors shall be deemed to be in compliance with such Safety Laws and General Laws.

8.    Except as otherwise expressly provided for in the Consulting Agreement, the Store Closing Sales at the Closing Stores shall be conducted by the Debtors and GBRP notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, the rejection

-5-

17905139v2

*Approved by Judge Michael Kaplan  March  12, 2014*

Case 14-14383-MBK    Doc 59    Filed 03/12/14    Entered 03/12/14 11:50:09    Desc Main
Document    Page 8 of 34

Page:       6
Debtor:     Ashley Stewart Holdings, Inc., et al.
Case No.:   14-14383 (MBK)
Caption:    Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
            Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
            Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
            Nonresidential Real Property

---

of leases, abandonment of assets or "going dark" provisions, provided, however, that nothing in this Order shall impact any objection a Landlord may have to assumption, assignment or rejection of their respective lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection.

9.      Except as may otherwise be specifically set forth in the Sale Guidelines, the Debtors and/or GBRP (as the case may be), are authorized and empowered to transfer assets among the Closing Stores.

10.     Provided that the Store Closing Sales are conducted in accordance with the terms of this Order, the Consulting Agreement and the Sale Guidelines, the Debtors, their Landlords and GBRP are presumed to be in compliance with the requirements of any applicable "going-out-of-business," "store closing," similar inventory liquidation sales, or bulk sale laws (each a "GOB Law," and together, the "GOB Laws").  To the extent there is a dispute arising from or relating to the Store Closing Sales, this Order, the Consulting Agreement, or the Sale Guidelines, which dispute relates to any GOB Law (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.

11.     Within one (1) business day of entry of this Order, the Debtors shall serve copies of this Order, the Consulting Agreement and the Sale Guidelines via e-mail, facsimile or regular mail, on:  (i) the attorneys general for the states in which the Closing Stores are located, and (ii) the divisions of consumer protection for the states in which the Closing Stores are located.  If, at any time within seven (7) days following service of the entry of this Order, any governmental authority wishes to assert that the Store Closing Sale conducted pursuant to this

-6-

17905139v2

*Approved by Judge Michael Kaplan  March  12, 2014*

Page:       7
Debtor:     Ashley Stewart Holdings, Inc., et al.
Case No.:   14-14383 (MBK)
Caption:    Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
            Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
            Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
            Nonresidential Real Property

---

Order, the Consulting Agreement and/or the Sale Guidelines is in violation of a GOB Law, it shall send written notice of such Reserved Dispute to counsel for the Debtors so as to ensure delivery thereof within one (1) business day thereafter. If the Debtors and the governmental authority are unable to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute. In the event such a motion is filed, nothing in this Order shall preclude the Debtors, a Landlord, GBRP or the other interested party from asserting (i) that the provisions of any GOB Law are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtors or GBRP's conduct pursuant to this Order, violates such GOB Law. Filing a motion as set forth in this paragraph shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or GBRP's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Order and the Consulting Agreement, absent further order of this Court. The Court grants authority for the Debtors and GBRP to conduct the Store Closing Sales pursuant to the terms of this Order, the Consulting Agreement, and/or the Sale Guidelines attached hereto and to take all actions reasonably related thereto or arising in connection therewith.

12.    The terms "GOB Law" and "GOB Laws" shall be deemed not to include any Safety Laws or General Laws. Notwithstanding any other provision in this Order, nothing herein shall exempt the Debtors and/or GBRP from compliance with any Safety Laws or General Laws or preclude any governmental entity from enforcing any Safety Laws or General Laws in the appropriate non-bankruptcy forum.

17905139v2

*Approved by Judge Michael Kaplan  March  12, 2014*

Page:       8
Debtor:     Ashley Stewart Holdings, Inc., et al.
Case No.:   14-14383 (MBK)
Caption:    Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
            Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
            Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
            Nonresidential Real Property

---

13.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes in connection with the order and the relief provided for herein, including, without limitation, to protect the Debtors, the Landlords and/or GBRP from interference with the Store Closing Sales, and to resolve any disputes related to the Store Closing Sales or arising under the Consulting Agreement or the implementation thereof.

14.     GBRP shall not be liable for any claims against the Debtors other than as expressly provided for in the Consulting Agreement.

15.     Subject to Safety Laws and General Laws, the Debtors and the Agent are hereby authorized to conduct the Store Closing Sales pursuant to the Agency Agreement and the Sale Guidelines, and take all actions reasonably related thereto or arising in connection therewith, including, without limitation, advertising the Store Closing Sales as "store closing," "sale on everything" or similar themed sales in media advertisements, interior banners, exterior banners, and other signage, including street signage and sign-walkers, as the Debtors and GBRP deem appropriate, notwithstanding any prohibitions in any statutes or ordinances affecting advertising, signs, banners, or the posting of signage, and the requirements of any otherwise applicable bulk sales laws are also hereby waived.

16.     The Debtors, GBRP and each of their respective officers, employees and agents be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Store Closing Sales and effectuate the Consulting Agreement and the related actions set forth therein.

-8-

*Approved by Judge Michael Kaplan  March  12, 2014*

Page:      9
Debtor:    Ashley Stewart Holdings, Inc., et al.
Case No.:  14-14383 (MBK)
Caption:   Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
           Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
           Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
           Nonresidential Real Property

---

17.     This Order constitutes an authorization of conduct by the Debtors and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any state, and the failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

18.     To the extent, if any, anything contained in this Order conflicts with a provision in the Consulting Agreement or the Sale Guidelines, this Order shall govern and control.  The Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the implementation of this Order.

19.     To the extent that the disposition of assets at the Store Closing Sales would constitute the sale of an interest in a consumer credit transaction that is subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), then the purchaser shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

20.     Gift cards, and merchandise credits issued by the Debtors prior to the Petition Date shall be accepted and honored by as provided in the Consulting Agreement.

21.     GBRP and the landlords of the Closing Stores are authorized to enter into separate agreements and/or side letters (the "Side Letters") between themselves modifying the Guidelines without further order of the Court, and such Side Letters shall be binding as among

-9-

17905139v2

*Approved by Judge Michael Kaplan  March  12, 2014*

Page:       10
Debtor:     Ashley Stewart Holdings, Inc., et al.
Case No.:   14-14383 (MBK)
Caption:    Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
            Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
            Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
            Nonresidential Real Property

---

GBRP and any such landlords.  In the event of a dispute regarding the Sale Guidelines or any Side Letter, counsel for each of the Debtors, the applicable landlord, and GBRP shall meet and confer to resolve the dispute.  In the event the parties are unable to resolve the dispute, any party may request a telephonic hearing before the Court on Friday, March 14, 2014.

22.     Nothing in this Order shall (a) alter or affect the Debtors' obligation to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a Lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fails to comply with section 365(d)(3) of the Bankruptcy Code.

23.     Notwithstanding Bankruptcy Rules 6004, and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

24.     The Initial Rejected Leases on the list attached hereto as **Exhibit C** are hereby deemed rejected as of the earlier of (i) March 31, 2014 and (ii) the date the property is surrendered and actually abandoned by the Debtors (the "Surrender Date") unless premises are surrendered after March 31, 2014, in which case the rejection shall be effective as of the date the premises are surrendered.

25.     The Debtors are deemed to have abandoned the Related Property as of the Surrender Date with respect to each Initial Rejected Lease.  Moreover, a party-in-interest, including a landlord, may, in its reasonable business judgment and without further notice, dispose of such Related Property without liability to the Debtors or any third party and, to the

-10-

*Approved by Judge Michael Kaplan  March  12, 2014*

Page:       11
Debtor:     Ashley Stewart Holdings, Inc., et al.
Case No.:   14-14383 (MBK)
Caption:    Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
            Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
            Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
            Nonresidential Real Property

---

extent applicable, the automatic stay is modified to allow such disposition.  Notwithstanding the

foregoing, the Debtors will leave the Closing Stores in broom clean condition.

26.    Nothing contained in the Motion, any related notice, this Order, or related

further order is to be construed as an admission by the Debtors as to the character of any

document denominated as a Lease or unexpired leases or to the rights of the non-debtor parties

thereto.  This Order shall not constitute a finding of fact or other adjudication with respect to

claims that a non-debtor party may have on the basis of contractual rights arising from the

expiration or termination of a Lease.  The Debtors reserve their rights to challenge any Lease on

any grounds they deem appropriate, and to assert against counterparties to Leases any claims,

counter-claims or defenses to a claim(s) by the non-debtor party against the Debtors, including,

without limitation, actions under chapter 5 of the Bankruptcy Code.

27.    Notwithstanding anything in the Motion or in this Order to the contrary,

any authority granted to the Debtors herein to make any payment shall be subject to any orders

authorizing the Debtors to use cash collateral or access postpetition financing.

28.    The relief requested in the Motion is necessary to avoid immediate and

irreparable harm and, thus, notwithstanding the possible applicability of Bankruptcy Rule 6003,

the terms and conditions of this Order shall be immediately effective and enforceable upon its

entry.

29.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h),

7062 or 9014, the terms and conditions of this Order shall be effective immediately and

enforceable upon its entry.

-11-

17905139v2

*Approved by Judge Michael Kaplan  March  12, 2014*

Page:        12
Debtor:      Ashley Stewart Holdings, Inc., <u>et al.</u>
Case No.:    14-14383 (MBK)
Caption:     Order Authorizing the Debtors to (A) Conduct Store Closing Sales at Certain
             Locations; (B) Enter Into and Approving the Consulting Agreement with Gordon
             Brothers Retail Partners, LLC; and (C) Reject Certain Unexpired Leases of
             Nonresidential Real Property

---

30.    To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

31.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

32.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

33.    A true copy of this Order shall be served on all parties-in-interest by regular mail within seven (7) days hereof.

-12-

17905139v2

*Approved by Judge Michael Kaplan  March  12, 2014*

## EXHIBIT A

**Consulting Agreement**

17905139v2

*Approved by Judge Michael Kaplan  March  12, 2014*

March 6, 2014

To:    New Ashley Stewart, LLC ("MERCHANT")
       100 Metro Way
       Secaucus, NJ 07094

From:  Gordon Brothers Retail Partners, LLC ("CONSULTANT")
       800 Boylston Street, 27th Floor
       Boston, MA 02199

Re:    "Store Closing" Agreement

Ladies and Gentlemen:

This letter shall serve as the agreement of CONSULTANT and MERCHANT pursuant to which CONSULTANT shall serve as the exclusive consultant to MERCHANT in connection with a "store closing" or other mutually agreed upon themed sale ("Sale") at MERCHANT's twenty-seven (27) retail stores identified on Exhibit A (the "Stores" and each individually a "Store").

1.    **RETENTION**

MERCHANT hereby retains CONSULTANT as its exclusive, independent consultant to conduct the Sale at the Stores during the Sale Term, and in connection therewith, CONSULTANT shall, throughout the Sale Term:

(i)    Recommend appropriate merchandise discounting, point-of-purchase, point-of-sale, and other internal and external advertising and signage, and merchandise presentation, in each case as necessary to effectively sell all of the Merchandise (as defined below) in accordance with a "store closing" or other mutually agreed upon themed sale.

(ii)   Provide a qualified supervisor to assist MERCHANT with its oversight of the Sale process in the Stores (including without limitation assisting MERCHANT with its communication with Store-level employees, managers, and customers to keep them abreast of Sale strategy and timing). Such supervisor shall work primarily with MERCHANT's district manager.

(iii)  Recommend Sale-related customer service and housekeeping activities.

(iv)   Recommend Sale-related staffing levels for the Stores.

(iv)   Recommend Sale-related loss prevention initiatives.

(v)    Recommend customer transition strategies to Merchant's other stores, ecommerce platforms, and other selling channels.

2.    **SALE TERM; VACATING STORES**

The "Sale Term" with respect to each respective Store shall commence on or about March 10, 2014 ("Sale Commencement Date") and shall terminate no later than March 30, 2014 ("Sale Termination Date"), provided however that either party may sooner terminate the Sale at any one or more Stores (on a Store-by-Store basis) upon mutual agreement. Upon the conclusion of the Sale Term at each Store, CONSULTANT shall leave such Store in broom clean condition, subject to CONSULTANT's right pursuant to Section 6(B) below to abandon in a neat and orderly manner all unsold FF&E.

3.    **EXPENSES**

(A)    All expenses incident to the conduct of the Sale and the operation of the Stores during the Sale Term shall be borne by MERCHANT, except solely for any of "CONSULTANT's Controlled Expenses" that exceed the aggregate budgeted amount (as provided in Section 3(B) below) for such CONSULTANT Controlled Expenses.

(D)    Attached hereto as Exhibit B is an expense budget for the "CONSULTANT's Controlled Expenses" (including without limitation for advertising, signage, CONSULTANT's Supervisor's fees/deferred fees/admin'strative fees and expenses, and miscellaneous expenses). CONSULTANT will advance funds for the CONSULTANT's Controlled Expenses, and MERCHANT shall reimburse CONSULTANT therefor (up to the aggregate budgeted amount and not on a line-item basis) in connection with each weekly reconciliation contemplated by Section 5(C) upon presentation of reasonable documentation for such actually-incurred expenses. MERCHANT shall be obligated to reimburse CONSULTANT for CONSULTANT Controlled Expenses in addition to all other fees/reimbursements/obligations contemplated hereunder.

(E)    As a condition to CONSULTANT commencing its services, MERCHANT shall advance CONSULTANT $52,500 (the "Advance") concurrently with the execution of this Agreement (but in all events prior to the Sale Commencement Date). CONSULTANT shall apply the Advance solely to CONSULTANT Controlled Expenses under this Agreement, which advance shall be subject to final confirmation and any necessary corrections as part of the Final Reconciliation.

4.    CONSULTANT COMPENSATION

MERCHANT shall pay CONSULTANT a "Fee" equal to one and one-quarter percent (1.25%) of the gross proceeds of all sales of Merchandise made in the Store during the Sale Term, net only of sales taxes (including without limitation cash, credit card, and gift card proceeds). As used in this Agreement, "Merchandise" shall mean all goods owned by MERCHANT that are sold from the Store during the Sale Term. MERCHANT shall pay CONSULTANT the Fee in connection with the Final Reconciliation.

5.    CONDUCT OF SALE; OTHER SALE MATTERS

(A)    MERCHANT shall have sole control over the personnel in the Stores. MERCHANT shall have sole control over the cash, debit and charge card payments for all Merchandise sold during the Sale Term in accordance with MERCHANT's normal cash management procedures.

(B)    The parties will meet on each Wednesday during the Sale Term to review any Sale matters reasonably requested by either party; and all amounts payable or reimbursable to CONSULTANT for the prior week (or the partial week in the case of the first and last weeks) shall be reconciled and paid immediately thereafter. No later than fifteen (15) days following the end of the Sale, the parties shall complete a final reconciliation and settlement of all amounts contemplated by this Agreement ("Final Reconciliation"), including without limitation a final determination and payment of (i) any remaining reimbursements to CONSULTANT; (ii) any amounts due on account of the Fee; and (iii) any amounts due on account of the FF&E Commission. From time to time upon request, each party shall prepare and deliver to the other party such other reports as either party may reasonably request. Each party to this Agreement shall, at all times during the Sale Term and during the one (1) year period thereafter, provide the other with access to all information, books and records relating to the Sale and to this Agreement. All records and reports shall be made available to CONSULTANT and MERCHANT during regular business hours upon reasonable notice.

(C)    MERCHANT shall solely be responsible for calculating, collecting, bonding, reporting, and remitting all sales taxes associated with the sale of Merchandise during the Sale Term in accordance with applicable law, and CONSULTANT shall have absolutely no responsibility whatsoever for such obligations.

(D)    Although CONSULTANT shall undertake its obligations under this Agreement in a manner designed to achieve the desired results of the Sale, and to maximize the net recovery from the Sale, MERCHANT acknowledges that CONSULTANT is not guaranteeing any results of the Sale.

2

*Approved by Judge Michael Kaplan  March  12, 2014*

MERCHANT further acknowledges that the parties are not conducting an inventory of the Merchandise to be included in the Sale (and that CONSULTANT has made no independent assessment of the beginning levels of such Merchandise) and CONSULTANT shall not bear any liability for shrink or other loss to any Merchandise.

(E)    To the extent MERCHANT has informed CONSULTANT in writing (with reasonable specificity and prior to the execution of this Agreement) of any rules relating to its employees or lease requirements in the Stores that are the subject of the Sale, CONSULTANT shall adhere to such rules.

(F)    All sales of Merchandise in the Stores during the Sale shall be made in the name, and on behalf of MERCHANT. All such sales shall be "final sales" and "as is," and all advertisements and sales receipts will reflect the same.

(G)    The Sale will be advertised as a "sale on everything," "total inventory clearance," or similar themed sale; and MERCHANT shall provide CONSULTANT with the right to use signs and internal and external banners and sign walkers reflecting this message without interruption by any person.

(H)    In each case jointly for purposes in furtherance of the Sale, MERCHANT shall provide to CONSULTANT, at no cost to CONSULTANT, with (i) the right of access to the Stores; (ii) central and distribution center services ordinarily provided to the Stores by MERCHANT; (iii) the use of MERCHANT's employees (in quantities consistent with historical periods); and (iv) all Store-level and intellectual property assets of the MERCHANT and the Stores (including, but not limited to, trade names, logos, customer lists (including email lists), social networking sites, computer hardware and software, and furniture, fixtures and equipment).

(I)    CONSULTANT shall advise MERCHANT with respect to the licensing requirements affecting the Sale as a "store closing" or other mutually agreed upon themed sale in compliance with applicable state and local "going out of business" laws ("GOB Laws"). In connection with such obligation, CONSULTANT will (i) advise MERCHANT of the applicable waiting period under the GOB Laws, and/or (ii) prepare (in MERCHANT's name and for MERCHANT's signature) all licensing paperwork as may be necessary under such GOB Laws, deliver all such paperwork to MERCHANT, and file, on behalf of MERCHANT all such paperwork where necessary, and/or (iii) advise where licensing paperwork and/or waiting periods do not apply.

6.    FF&E
(A)    Promptly following the Sale Commencement Date (but no later than the third business day following the Sale Commencement Date), MERCHANT shall inform CONSULTANT of those items of furniture, fixtures, and equipment located at the Store which are not to be sold (because MERCHANT does not have the right to sell such items, because MERCHANT wishes to retain such items for itself, or otherwise) (collectively, "Retained FF&E").

(B)    With respect to all furniture, fixtures, and equipment located at the Store as of the Sale Commencement Date which is not Retained FF&E (collectively the "FF&E"), CONSULTANT shall have the right to sell such FF&E during the Sale Term on a commission basis equal to twenty percent (20%) of the gross sales of FF&E net only of sales tax ("FF&E Commission"). The FF&E Commission shall be paid in connection with the Final Reconciliation.

(C)    MERCHANT shall reimburse CONSULTANT for its reasonable sale expenses associated with the sale of FF&E, not to exceed the amount shown on an FF&E expense budget to be mutually and reasonably agreed to by the parties promptly after the identification/designation of the FF&E and Retained FF&E ("FF&E Expenses").

*Approved by Judge Michael Kaplan  March  12, 2014*

(D)     CONSULTANT shall have the right to abandon any unsold FF&E (and all Retained FF&E) at the Store at the conclusion of the Sale Term without liability to MERCHANT or any third party.

## 7.    INSURANCE; RISK OF LOSS

During the Sale Term (a) MERCHANT shall maintain (at its expense) insurance with respect to the Merchandise in amounts and on such terms and conditions as are consistent with MERCHANT's ordinary course operations, and (b) each of MERCHANT and CONSULTANT shall maintain (at each party's respective expense) comprehensive liability insurance covering injuries to persons and property in or in connection with the Stores, in such amounts as are reasonable and consistent with its ordinary practices, for bodily injury, personal injury and/or property damage. Each party shall use commercially reasonable efforts to have: (a) the other party named as an additional insured on all such insurance of the other party; (b) all such insurance be non-cancelable and non-changeable except upon 30 days' prior written notice to the other party; and (c) certificates of all such insurance delivered to the other party as soon as practicable following the execution of this Agreement.

Notwithstanding any other provision of this Agreement, MERCHANT and CONSULTANT agree that (i) CONSULTANT shall not be deemed to be in possession or control of the Stores or the Merchandise or other assets located therein or associated therewith, or of MERCHANT's employees located at the Stores, and (ii) CONSULTANT does not assume any of MERCHANT's obligations or liabilities with respect to any of the matters addressed in subsection (i) above. This paragraph shall not limit CONSULTANT's indemnification rights as set forth in Section 8(A) below.

Notwithstanding any other provision of this Agreement, MERCHANT and CONSULTANT agree that MERCHANT shall bear all responsibility for liability claims (product liability and otherwise) of customers, employees and other persons arising from events occurring at the Stores, and Merchandise sold in the Stores, before, during and after the Sale Term, except to the extent any such claim arises from the negligence, willful misconduct or unlawful acts of CONSULTANT.

## 8.    **INDEMNIFICATION**

(A)     CONSULTANT shall indemnify and hold MERCHANT and its affiliates, and their respective officers, directors, employees, consultants, and independent contractors (collectively, "MERCHANT Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

   (i)     CONSULTANT's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

   (ii)    any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees or agents of MERCHANT by CONSULTANT, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives; or

   (iii)   the negligence, willful misconduct or unlawful acts of CONSULTANT, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives.

(B)     MERCHANT shall indemnify and hold CONSULTANT, its affiliates and their respective officers, directors, employees, consultants, and independent contractors (collectively, "CONSULTANT Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

   (i)     MERCHANT's material breach of or failure to comply with any of its agreements,

*Approved by Judge Michael Kaplan  March  12, 2014*

covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

(ii)     any claims by any party engaged by MERCHANT as an employee or independent contractor arising out of such engagement, except where due to the negligence, willful misconduct or unlawful acts of CONSULTANT, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives;

(iii)    any consumer warranty or products liability claims relating to any Merchandise; and/or

(iv)    the negligence, willful misconduct and unlawful acts of MERCHANT, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives.

9.     CERTAIN DISCLOSURE AND OTHER MATTERS

(A)     CONSULTANT hereby discloses to MERCHANT that one or more affiliates of CONSULTANT owns certain equity and debt securities of MERCHANT, and manages those investments through an affiliate of CONSULTANT.  MERCHANT hereby acknowledges and consents to the multiple roles being played by CONSULTANT's affiliates and waives any conflicts (actual or perceived) resulting therefrom.

(B)     Immediately upon the filing of any chapter 11 bankruptcy case by MERCHANT, MERCHANT shall file, as one of its first day motions, a motion seeking to assume this Agreement pursuant to Bankruptcy Code section 365 (which motion must be approved of by CONSULTANT prior to its filing). If an order authorizing MERCHANT to assume this Agreement (in form and substance materially satisfactory to CONSULTANT) is not entered by the Bankruptcy Court within 5 days after the filing of MERCHANT's bankruptcy petition, CONSULTANT shall have no further obligations to continue to perform under the Agreement.

10.     MISCELLANEOUS

This Agreement constitutes the entire agreement between the parties with respect to the matters contemplated hereby and supersedes and cancels all prior agreements, including, but not limited to, all proposals, letters of intent or representations, written or oral, with respect thereto.  This Agreement may not be modified except in a written instrument executed by each of the parties hereto.  No consent or waiver by any party, express or implied, to or of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party.  The failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.  Unless expressly set forth herein to the contrary, to the extent that either party's consent is required/requested hereunder, such consent shall not be unreasonably withheld or delayed.  Each of CONSULTANT and MERCHANT shall comply with all federal, state and local laws, rules and regulations applicable to them in connection with the transactions contemplated by this Agreement.  This Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns; provided, however, that this Agreement may not be assigned by either party without the prior written consent of the other.  Written notices contemplated by this Agreement shall be sent by email (i) if to MERCHANT, c/o Michael Abate at mabate@ashleystewart.com; and (ii) if to CONSULTANT, c/o Michael Chartock at mchartock@gordonbrothers.com.

Very truly yours,

**Gordon Brothers Retail Partners, LLC**

By: _Lee L. Coté_

Print Name and Title:

*Lee. L. Coté*
*Sr. Managing Director  3/6/14*

*Approved by Judge Michael Kaplan  March  12, 2014*

Agreed and Accepted:

**New Ashley Stewart, LLC** INC

By: _____

Print Name and Title: *Michael Abate*
*VP/Treasurer*

Exhibits:

A        Stores

B        Budget of CONSULTANT Controlled Expenses

Ashley Stewart
Store List
Exhibit A

| # | Name | Address | Zip | City | State |
|---|------|---------|-----|------|-------|
| 457 | Hanes Mall | 3320 Silas Creek Parkway | 27103 | Winston-Salem | NC |
| 383 | Pierre Bossier Mall | 2950 East Texas Street | 71111 | Bossier City | LA |
| 462 | Willow Lawn | 1601 Willow Lawn Drive | 23230 | Richmond | VA |
| 273 | Amity Road | 160 Amity Road | 06515 | New Haven | CT |
| 278 | Stratford Plaza | 318 Boston Avenue | 06614 | Stratford | CT |
| 168 | Southlake Mall | 2709 Southlake Mall | 30260 | Morrow | GA |
| 171 | Macon Mall | 3661 Eisenhower Pkwy | 31206 | Macon | GA |
| 256 | Old National Town Center | 5175 Old National Highway | 30349 | College Park | GA |
| 480 | Arbor Place | 6700 Douglas Boulevard | 30135 | Douglasville | GA |
| 158 | Lafayette Sq. | 3919 Lafayette Road | 46254 | Indianapolis | IN |
| 570 | El Monte Mall | 1413 El Monte Mall Road | 54886 | San Pablo | CA |
| 585 | Culver City | 6000 Sepulveda Blvd | 90230 | Culver City | CA |
| 720 | Southland Mall | 384 Southland Mall Drive | 94545 | Hayward | CA |
| 475 | Florin Towne Center | 6075 Florin Road | 95823 | Sacramento | CA |
| 435 | Powell Street Plaza | 575 Christie Avenue | 54608 | Emeryville | CA |
| 482 | Seiger Plaza | Baton Rouge | 70806 | Baton Rouge | LA |
| 442 | Mattapan | 1525 1532 Blue Hill Avenue | 02126 | Mattapan | MA |
| 185 | University Square | 8440 Olive Street | 63130 | Saint Louis | MO |
| 180 | Lindell Marion Place | 4157 Lindell Boulevard | 63108 | Saint Louis | MO |
| 459 | St. Clair Square | 134 St. Claire Square | 62208 | Fairview Heights | IL |
| 280 | Westside South S/C | 64 E Westbank expressway | 70053 | Gretna | LA |
| 403 | Esplanade Mall | Kenner | 70065 | Kenner | LA |
| 309 | Cherry Hill Mall | 2000 Rt 38 West | 8002 | Cherry Hill | NJ |
| 410 | Gateway Centre | Chicago | 60603 | Chicago | IL |
| 264 | Sunny Isle S/C | Sion Farm | 825 | Christiansted | Virgin Is |
| 399 | Broward Mall | 8000 W. Broward Blvd | 33388 | Plantation | FL |
| 431 | Southland Mall | 20505 South Dixie Highway | 33180 | Miami | FL |

Ashley Stewart

Consultant Controlled Expenses

Exhibit **B**

# Stores :                    37
Sale Term :                  3/11/14-3/30/14
# Weeks :                    2.9

|                              | $      |
|------------------------------|--------|
| Advertising subtotal         | 21,000 |
| Supervision subtotal         | 30,000 |
| Misc subtotal                | 2,500  |
| **Total Consultant Controllable Expenses** | **53,500** |

This expense budget is based upon the above start and end dates.
Any changes in those dates may result in adjustments to the expense
budget, which will be agreed upon by Consultant and Merchant.

Per Section 3 of the Agreement, Merchant will advance Consultant $53,500 as a
condition prior to Sale Commencement Date. In the event that actual Consultant
Controllable Expenses are less than $53,500, any excess advance will be
returned to Merchant upon final reconciliation.

*Approved by Judge Michael Kaplan  March  12, 2014*

# **EXHIBIT B**

## **Sale Guidelines**

*Approved by Judge Michael Kaplan  March  12, 2014*

## SALE GUIDELINES

1.    The Sale shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Closing Stores.

2.    The Sale shall be conducted in accordance with applicable state and local "Blue Laws" where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Store on a Sunday.

3.    On "shopping center" property, GBRP shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Store's premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Closing Store is located; provided that GBRP may solicit customers in the Closing Stores themselves.   On "shopping center" property, GBRP shall not use any flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.    At the conclusion of the Sale, GBRP shall vacate the Closing Stores in broom clean condition, and shall leave the locations in the same condition as on Sale Commencement Date, ordinary wear and tear excepted, provided, however, the Merchant and GBRP hereby do not undertake any greater obligation than as set forth in an applicable lease with respect to a Closing Store or the Distribution Center, and Merchant can abandon Related Property.

5.    GBRP shall be permitted to utilize display, hanging signs, and interior banners in connection with the Sale; provided, however, that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner.   The Merchant and GBRP may advertise the Sale as a "store closing", "sale on everything", or similar themed sale. The Merchant and GBRP shall not use neon or Day-Glo on its display, hanging signs, or interior banners.   Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines.   Nothing contained herein shall be construed to create or impose upon GBRP any additional restrictions not contained in the applicable lease agreement.   In addition, the Merchant and GBRP shall be permitted to utilize exterior banners at (i) non-enclosed mall Closing Stores and (ii) enclosed mall Closing Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Closing Store, shall not be wider than the storefront of the Closing Store, and shall not be larger than 3 feet x 30 feet.   In addition, the Merchant and GBRP shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Approval Order.

6.    Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "ALL SALES ARE FINAL."

7.    Except with respect to the hanging of exterior banners, GBRP shall not make any alterations to the storefront or exterior walls of any Closing Stores.

*Approved by Judge Michael Kaplan  March  12, 2014*

8.    GBRP shall not make any alterations to interior or exterior Store lighting.  No property of the landlord of a Closing Store shall be removed or sold during the Sale.  The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Closing Store.

9.    GBRP shall keep Closing Stores' premises and surrounding areas clear and orderly consistent with present practices.

10.    Subject to the provisions of the Agreement and the Approval Order, GBRP shall have the right to sell certain furniture, fixtures, and equipment located at the Closing (the "Merchant FF&E").  GBRP may advertise the sale of the Merchant FF&E in a manner consistent with these Sale Guidelines.  The purchasers of any Merchant FF&E sold during the Sale shall be permitted to remove the Merchant FF&E either through the back shipping areas at any time or through other areas after store business hours.  For the avoidance of doubt, as of the Sale Termination Date Merchant may abandon, in place and without further responsibility or obligation, any unsold Merchant FF&E located at a Closing Store.  Any abandoned Merchant FF&E left in a Closing Store after the underlying lease is rejected shall be deemed abandoned to the landlord, with the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Merchant.

11.    At the conclusion of the Sale at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases.  The Merchant, GBRP and their agents and representatives shall continue to have exclusive and unfettered access to the Closing Stores.

12.    Post-petition rents shall be paid by the Merchant as required by the Bankruptcy Code until the rejection or assumption and assignment of each lease.  GBRP shall have no responsibility therefor.

13.    The rights of landlords against Merchant for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

14.    If and to the extent that the landlord of any Closing Store affected hereby contends that GBRP or Merchant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant's counsel and the Agent's counsel as follows:

*Approved by Judge Michael Kaplan  March  12, 2014*

If to the Merchant:

    Curtis, Mallet-Prevost, Colt & Mosle LLP
    101 Park Avenue
    New York, NY 10178
    Attn:  Steven Reisman and Cindi Giglio
    Tel:  212.696.6000
    Email: sreisman@curtis.com and cgiglio@curtis.com.

If to GBRP:

    Lowenstein Sandler LLP
    65 Livingston Avenue
    Roseland, New Jersey 07068
    Attn:  Bruce Buechler
    Tel:  973.597.2308
    Email: bbuechler@lowenstein.com.

13.    To the extent there are any inconsistencies between this Exhibit and the Consulting Agreement, the terms of the Consulting Agreement shall control.  To the extent there are any inconsistencies between this Exhibit and the Approval Order, the terms of the Approval Order shall control.

*Approved by Judge Michael Kaplan  March  12, 2014*

# **EXHIBIT C**

**Closing Stores**

*Approved by Judge Michael Kaplan  March  12, 2014*

## EXHIBIT C

### Initial Rejected Leases[1]

| Number | Store Number | Address of Subject Property | Non-Debtor Party and Notice Information | Related Property (If applicable) | Contact Name/Address for Related Property (If applicable) | Rejection Date |
|---|---|---|---|---|---|---|
| 1 | 158 | Lafayette Sq. 3919 Lafayette Road IN, 46254 | Lafayette Square Shopping Center LLC c/o Ashkenazy Acquisition Corp. 150 East 58th Street 39th Floor, New York, N.Y. 10155 | N/A | N/A | On or before 3/31/2013 |
| 2 | 168 | Southlake Mall 2409 Southlake Mall GA, 30260 | C-III, PWR18, Southlake Mall c/o Bayer Properties, LLC, 2222 Arlington Avenue, Birmingham, AL 35205 Attn: General Counsel | N/A | N/A | On or before 3/31/2013 |
| 3 | 171 | Macon Mall 3661 Eisenhower Pkwy GA, 31206 | HSG Macon Mall LLC, Attn: c/o Hull Storey Retail Group, LLC, dba Hull Storey Gibson Companies, LLC, 1190 Interstate Parkway, Augusta, GA 30909 | N/A | N/A | On or before 3/31/2013 |
| 4 | 185 | 185 University Square 6940 Olive Street MO, 63130 | USR-Desco University City Square LLC, c/o The Desco Group, Inc. 25 North Brentwood Boulevard, St. Louis, MO 63105 | N/A | N/A | On or before 3/31/2013 |

[1] All contracts and/or leases listed herein are as supplemented, modified or amended, and including all ancillary agreements relating thereto.

Approved by Judge Michael Kaplan  March  12, 2014

| Number | Store Number | Address of Subject Property | Non-Debtor Party and Notice Information | Related Property (if applicable) | Contact Name/Address for Related Property (if applicable) | Rejection Date |
|---|---|---|---|---|---|---|
| 5 | 190 | Lindell Market Place 4167 Lindell Boulevard MO, 63108 | Lindell Marketplace, LP, 2127 Innerbelt Business Center Drive, Suite 310, St. Louis, MO 63114 | N/A | N/A | On or before 3/31/2013 |
| 6 | 264 | Sunny Isle S/C Sion Farm Virgin Island, 82 | Sunny Isle Developers LLC, Sunny Isle Professional Building, Suite 3, St. Croix, VI 00820 | N/A | N/A | On or before 3/31/2013 |
| 7 | 272 | Amity Plaza 163 Amity Road CT, 06515 | Wellmakara, LLC, 536 Main Street, New Hartford, CT 06057 | N/A | N/A | On or before 3/31/2013 |
| 8 | 278 | Stratford Plaza 318 Boston Avenue CT, 06614 | 360 Stratford Heights Associates LLC, c/o The Heights Real Estate Company, 369 East 62nd Street, New York, NY 10065-7755 | N/A | N/A | On or before 3/31/2013 |
| 9 | 280 | Westside South S/C 64 G Westbank Expressway LA, 70053 | Groma Realty Associates LLC, c/o American Commercial Realty, 324 Datura Street, Suite 102, West Palm Beach, FL 33401, Attn: Legal Department | N/A | N/A | On or before 3/31/2013 |

2

Approved by Judge Michael Kaplan  March  12, 2014

| Number | Store Number | Address of Subject Property | Non-Debtor Party and Notice Information | Related Property (if applicable) | Contact Name/Address for Related Property (if applicable) | Rejection Date |
|---|---|---|---|---|---|---|
| 10 | 303 | Cherry Hill Mall 2000 Rt 38 West NJ, 8002 | Cherry Hill Center, LLC, c/o Pennsylvania Real Estate Investment Trust, The Bellevue, 200 South Broad Street, 3rd Floor, Philadelphia, PA 19102 Attn: General Counsel and Andrew M. Ioannou, SVP and Treasurer | N/A | N/A | On or before 3/31/2013 |
| 11 | 366 | Old National Town Center 6175 Old National Highway GA, 30349 | Culver Center Partners Georgia LLC, /o culver Center Partners Georgia – West #1 LLC as TIC, c/o Colliers International management – Atlanta LLC, Promenade Suite 800, 1230 Peachtree Street NE, Atlanta, GA 30309-3574 | N/A | N/A | On or before 3/31/2013 |
| 12 | 370 | Hilltop Mall 1415 Hilltop Mall Road CA, 94806 | Morgan Stanley Capital I Trust Commercial Mortgage PT Certificates, Series 2005-HQ7 REMIC , c/o C-III Asset Management, 5221 N. O'Connor Blvd, Suite 600, Irving, TX 75039 Attn: Mike Ludden, CMPS RBC | N/A | N/A | On or before 3/31/2013 |
| 13 | 382 | Pierre Bossier Mall 2950 East Texas Street LA, 71111 | Pierre Bossier Mall LLC, c/o Rouse Properties, Inc., 1114 Avenue of the Americas, Suite 2800, New York, NY 10036-7703, Attn: General Counsel | N/A | N/A | On or before 3/31/2013 |

4

| Number | Store Number | Address of Subject Property | Non-Debtor Party and Notice Information | Related Property (if applicable) | Contact Name/Address for Related Property (if applicable) | Rejection Date |
|---|---|---|---|---|---|---|
| 14 | 386 | Culver City 6000 Sepulveda Blvd CA, 90230 | Culver City Mall LLC, c/o Westfield, LLC. 11601 Wilshire Boulevard, 11th Floor, Los Angeles, CA 90025 Attn: Lease Administration | N/A | N/A | On or before 3/31/2013 |
| 15 | 399 | Broward Mall 8000 W. Broward Blvd FL, 33388 | Broward Mall, LLC, c/o Westfield, LLC, 11601 Wilshire Boulevard, 11th Floor, Los Angeles CA 90025 Attn: Lease Administration | N/A | N/A | On or before 3/31/2013 |
| 16 | 408 | 408 Esplanade Mall 1401 W. Esplanade Mall LA, 70065 | Esplanade Mall Limited Partnership, c/o The Mills Corp., 1300 Suite 400, Arlington, VA 22209, Attn: Real Estate | N/A | N/A | On or before 3/31/2013 |
| 17 | 410 | Gateway Centre  1751 C. West Howard IL, 60602 | Gateway Center Economic Development, SEC Clark & Howard, LLC, c/o Cere and Value Advisors, 4 Embarcadero Center, Suite 3300, San Francisco, CA 94111 | N/A | N/A | On or before 3/31/2013 |
| 18 | 420 | Southland Mall 394 Southland Mall Drive CA, 94545 | Southland Mall, LP  Rouse Properties, 1114 Avenue of the Americas, Suite 2800, New York, NY 10036-7703 Attn: General Counsel | N/A | N/A | On or before 3/31/2013 |

| Number | Store Number | Address of Subject Property | Non-Debtor Party and Notice Information | Related Property (if applicable) | Contact Name/Address for Related Property (if applicable) | Rejection Date |
|---|---|---|---|---|---|---|
| 19 | 431 | Saigon Plaza 6725 Saigon Lane LA, 70809 | Inland American Baton Rouge Saigon, LLC, c/o Inland American Retail Management, LLC, Bldg. #44650, Attn: DeAnna Grant, 2901 Butterfield Road, Oak Brook, IL 60523 CC Vice President at same address | N/A | N/A | On or before 3/31/2013 |
| 20 | 442 | Mattapan 1621-1623 Blue Hill Avenue MA, 02126 | 10 Fairway LLC, c/o Dane Shulman Associates, LLC, 1601 Blue Hill Avenue, P.O. Box 269100, Mattapan, MA 02126-9100 | N/A | N/A | On or before 3/31/2013 |
| 21 | 445 | Florin Towne Center 6075 Florin Road CA, 95823 | Florin Associates LLC, c/o Voit Real Estate Services, 2237 Douglas Boulevard, Suite 100, Roseville, CA 95661 | N/A | N/A | On or before 3/31/2013 |
| 22 | 455 | Powell Street Plaza 575 Christie Avenue CA, 94608 | Regency Centers, LP, c/o Regency Centers Corporation, One Independent Drive, Suite 114, Jacksonville, FL 32202-5019 Attn: Lease Administration | N/A | N/A | On or before 3/31/2013 |
| 23 | 457 | Hamse Mall 3320 Silas Creek Parkway NC, 27103 | JG Winston Salem, LLC, 2030 Hamilton Place Boulevard, Suite 500, Chattanooga, TN 37421-6000 | N/A | N/A | On or before 3/31/2013 |

Approved by Judge Michael Kaplan  March  12, 2014

| Number | Store Number | Address of Subject Property | Non-Debtor Party and Notice Information | Related Property (if applicable) | Contact Name/Address for Related Property (if applicable) | Rejection Date |
|---|---|---|---|---|---|---|
| 24 | 459 | St. Clair Square 134 St. Claire Square IL, 62208 | St Clair Square SPE, LLC, c/o CBL & Associates Management, Inc., 134 St. Clair Square, Fairview Heights, IL 62208 Attn: Property Accounts Manager | N/A | N/A | On or before 3/31/2013 |
| 25 | 460 | Arbor Place 6700 Douglas Boulevard GA, 30135 | Arbor Place II, LLC, c/o CBL & Associates Management, Inc., CBL Center, Suite 500, 2030 Hamilton Place Boulevard, Chattanooga, TN 37421-6000 | N/A | N/A | On or before 3/31/2013 |
| 26 | 461 | Southland Mall 20505 South Dixie Highway FL, 33189 | Southland Mall Properties, LLC, c/o Gumberg Asset Management Corp., 3200 North Federal highway, Ft. Lauderdale, FL 33306 , Attn: Legal Department | N/A | N/A | On or before 3/31/2013 |
| 27 | 462 | Willow Lawn 1601 Willow Lawn Drive VA, 23230 | Federal Realty Investment Trust, 1626 East Jefferson Street, Rockville MD 20852-4041 | N/A | N/A | On or before 3/31/2013 |

Approved by Judge Michael Kaplan  March  12, 2014